PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

v.

STEVEN IRA COHEN,
　　　　　*Defendant-Appellant.*

No. 05-4565

Appeal from the United States District Court
for the Eastern District of North Carolina, at New Bern.
Malcolm J. Howard, District Judge.
(CR-03-77-H; CR-04-28-H)

Argued: May 26, 2006

Decided: August 17, 2006

Before NIEMEYER and TRAXLER, Circuit Judges, and
Joseph R. GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Dismissed by published opinion. Judge Traxler wrote the opinion, in
which Judge Niemeyer and Judge Goodwin joined.

## COUNSEL

**ARGUED:** Larry Constantine Economos, MILLS & ECONOMOS,
L.L.P., Greenville, North Carolina, for Appellant. Anne Margaret
Hayes, Assistant United States Attorney, OFFICE OF THE UNITED
STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON
BRIEF:** Frank D. Whitney, United States Attorney, Christine Wit-

cover Dean, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

**OPINION**

TRAXLER, Circuit Judge:

Pursuant to a written plea agreement, Steven Ira Cohen pled guilty to two counts of mail fraud, *see* 18 U.S.C.A. § 1341 (West Supp. 2006), and one count of conspiracy to commit health care fraud, *see* 18 U.S.C.A. § 1347 (West 2000). The district court sentenced Cohen to a term of 28 months imprisonment, followed by a three-year term of supervised release, and ordered Cohen to pay $371,901 in restitution, pursuant to the Mandatory Victims Restitution Act ("MVRA"), *see* 18 U.S.C.A. § 3663A (West 2000 & Supp. 2006).

Cohen now seeks to appeal, arguing that the district court erred in determining the amount of loss for sentencing purposes and in calculating the amount of restitution owed to his victims. The United States moved to dismiss the appeal based on an appeal waiver contained in Cohen's plea agreement. Because the appeal waiver is valid and the issues Cohen seeks to raise fall within its scope, we grant the government's motion and dismiss the appeal.

I.

Defendant Cohen is a chiropractor licensed to practice in the State of North Carolina, who has owned, operated, and practiced at several chiropractic clinics in the state since the early 1980s. In January 2004, Cohen was indicted on 21 counts of mail fraud and 16 counts of health care fraud (the "First Indictment"). The First Indictment charged that, from July 6, 1998 through October 22, 1998, Cohen devised a scheme to defraud Blue Cross/Blue Shield ("BCBS") and the United States Department of Labor's Office of Worker's Compensation Programs ("OWCP") by submitting claims for medical services that had never been provided and by submitting claims that misrepresented the nature and extent of patient treatments. According to the

First Indictment, Cohen's fraudulent claims caused BCBS and OWCP to send checks by U.S. Mail in payment for the services purportedly rendered at Cohen's clinics.

Approximately three months later, Cohen was charged in a separate indictment with one count of conspiracy to commit health care fraud, 511 counts of health care fraud, one count of conspiring to launder money, in violation of 18 U.S.C.A. § 1956 (West 2000 & Supp. 2006), and two counts of attempting to influence a witness, in violation of 18 U.S.C.A. § 1512(b)(1) (West 2000) (the "Second Indictment"). The Second Indictment charged a much broader scheme, alleging that from June 1999 through April 2004, Cohen set up several different clinics and conspired with others, including other medical providers, to submit false and fraudulent health care claims to BCBS and several additional insurance companies. According to the Second Indictment, Cohen and other members of the conspiracy submitted claims with fictitious addresses, multiple claims for the same treatment, claims for services that were never rendered, and claims that misrepresented the nature of the treatment provided. Each of the 511 separate counts of health care fraud represents a separate fraudulent billing that incorporates by reference the factual basis of the conspiracy.

On July 7, 2004, the district court ordered the two indictments consolidated for trial. The parties engaged in plea negotiations and, on July 23, 2004, reached a plea agreement that was memorialized in writing. In paragraphs 2.a. and 2.b. of the plea agreement, respectively, Cohen agreed, without qualification, "[t]o plead guilty to counts sixteen and seventeen of the [First Indictment], filed January 14, 2004; and count one of the [Second] Indictment filed April 15, 2004," and "[t]o make restitution to any victim in whatever amount the Court may order, pursuant to 18 U.S.C. §§ 3663 and 3663A [of the MVRA]." J.A. 65. Counts sixteen and seventeen of the First Indictment charged Cohen with receiving payment from BCBS for two fraudulent health care claims. Count One of the Second Indictment charged Cohen with the June 1999 through April 2004 conspiracy to defraud the insurance companies.

Paragraph 2.c. of the agreement memorialized an appeal waiver, under which Cohen agreed:

> To waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the [applicable and advisory] Guideline range, reserving only the right to appeal from an upward departure from the Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the Government of any of its rights to appeal provided by law.

J.A. 66. In paragraph 4 of the agreement, Cohen represented that he understood the maximum terms of imprisonment for his crimes, as well as the applicable penalty of "[r]estitution pursuant to 18 U.S.C. §§ 3663 and 3663A [of the MVRA], and as agreed to in paragraph 2(b) [of the agreement]." J.A. 71, 72.

Following a guilty plea proceeding pursuant to Rule 11(b) of the Federal Rules of Criminal Procedure, the district court accepted Cohen's plea. At the subsequent sentencing hearing, the district court heard arguments and evidence as to the amount of loss for purposes of calculating the advisory guideline sentence, as well as to the amount of restitution due under the MVRA. At the conclusion of the hearing, the district court calculated the amount of loss from the fraudulent schemes, for purposes of determining Cohen's advisory guideline range, at $377,095. Cohen was sentenced to 28 months in prison, followed by a three-year term of supervised release. In addition, the district court calculated Cohen's restitution obligations to his victims to be $371,901.[1]

---

[1]The $377,095 loss calculation was based upon loss allocated to four insurance carriers (Allstate Insurance ($17,150), Nationwide Insurance ($20,135), State Farm Insurance ($49,440), and Blue Cross Blue Shield ($290,370)). The restitution amounts for each company were identical, with the exception of Allstate Insurance Company, which had a loss amount of $17,150, but a restitution amount of only $11,976.

## II.

Despite the appeal waiver, Cohen thereafter filed this appeal seeking to challenge the district court's calculation of the $377,095 guideline loss as clearly erroneous, and the restitution amount of $371,901 as an abuse of discretion. He argues that the appeal waiver provision contained in the plea agreement is invalid and unenforceable. Even if enforceable, Cohen argues that he may nevertheless appeal the restitution portion of the order because restitution falls outside the scope of the appeal waiver.

The government moved to dismiss the appeal based upon the appeal waiver. Thus, "[t]he threshold issue we must consider is whether the appeal waiver in [Cohen's] plea agreement precludes him from presenting these issues on appeal." *United States v. Blick*, 408 F.3d 162, 167 (4th Cir. 2005). Generally speaking, we will uphold a defendant's waiver of appellate rights if the waiver is valid and the issue sought to be appealed falls within the scope of the waiver. *See United States v. Attar*, 38 F.3d 727, 731-33 (4th Cir. 1994); *see also Blick*, 408 F.3d at 168 (We "adhere[ ] to the principle that sentencing appeal waivers generally are enforceable, and we have enforced such waivers in a number of cases."). To determine whether an appeal waiver is valid, we look to "whether the defendant knowingly and intelligently agreed to waive the right to appeal," an inquiry "ultimately . . . evaluated by reference to the totality of the circumstances." *Id.* at 169 (internal quotation marks omitted). We review the validity of an appeal waiver *de novo*. *See id.* at 168.

### A.

On appeal, Cohen argues that we should find his appeal waiver to be invalid and unenforceable because: his ability to knowingly and intelligently waive his right to appeal was compromised by his Attention Deficit Hyperactivity Disorder ("ADHD") and accompanying reading and writing disability; the government drafted the plea agreement and he was in an unequal bargaining position given the severity of the charges leveled against him; the appeal waiver was not reciprocal; and the government induced him to sign the plea agreement by promising not to argue a guideline loss in excess of $76,211.61 at sentencing.

Cohen's argument that the agreement was not knowingly and intelligently entered into because he suffered from ADHD during its negotiation and execution is simply not supported by the record. The record reflects that the district court undertook a careful inquiry to determine that Cohen was competent and understood what he was doing by entering into the plea agreement and pleading guilty. The district court asked specific questions about Cohen's ADHD condition, and explained to Cohen that the court had to be "clear and certain that the record is correct and that you had the requisite understanding of what's going on in order to enter a plea" because "at some point in time, there may be a reason that you or some other individual would challenge your capacity to enter a plea today." S.J.A. 858. Cohen was also represented by counsel during the proceedings, who assured the district court that the various doctors who evaluated Cohen all found him competent to understand the nature of the court proceedings. Cohen's attorney further stated that he had no difficulty communicating with Cohen and had no reason to doubt Cohen's competency. Cohen likewise represented to the district court that he had read his plea agreement, discussed it with his attorney, and understood "the terms, the language, the sentences, even legal phrases" in the agreement after discussing it with his attorney. S.J.A. 864-65.

In sum, the record evidence concerning Cohen's mental impairments shows that he had the ability, after adequate consultation with his lawyer, to enter into a knowing, intelligent and voluntary waiver of his right to appeal, and does not call into question his sworn representations to the district court. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc) ("Statements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea constitute a formidable barrier to attacking the plea.") (internal quotation marks omitted).

We likewise reject Cohen's argument that his appeal waiver is unenforceable because he was induced to plead guilty based on his "understanding" that the government would not argue at sentencing

that his actions resulted in a loss of more than $76,211.61. In essence, Cohen argues that this "understanding" formed a part of his plea agreement, which the government breached by advocating that he was responsible for far higher losses. Although we will not enforce an otherwise valid appeal waiver against a defendant if the government breached the plea agreement containing that waiver, *see Blick*, 408 F.3d at 168, the record in this case does not support Cohen's claim that this "understanding" was part of his plea agreement. Cohen admitted to the district court that the "understanding" was "not committed to writing [in] the plea agreement." J.A. 359. At the plea colloquy, he further represented that the plea agreement contained all agreements he had with the government and that no one had made any other offer to induce him to plead guilty other than what was contained in the plea agreement. We will not invalidate Cohen's appeal waiver based on allegations of an "understanding" that is undocumented and unsupported.

Cohen's claim that we should find the waiver unenforceable based upon his "unequal bargaining position" given the severity of the charges leveled against him is equally unavailing. Cohen was represented by counsel during these proceedings, there is no indication that he was subjected to any unconscionable conduct during the negotiation process, and Cohen affirmatively represented to the district court that no one had threatened him or tried to force him to plead guilty. S.J.A. 865.[2] Thus, on our review of the record, we conclude that Cohen knowingly and voluntarily entered into the appeal waiver contained in his plea agreement and that it is valid and enforceable.

---

[2]As noted above, the appeal waiver provision of the plea agreement explicitly allowed the government to retain its right to appeal. But even if we were to conclude that appeal waivers in plea agreements must always be reciprocal, regardless of the parties' desire to negotiate them otherwise, the remedy would not be to invalidate the defendant's waiver, but to deem the government as having waived its right to appeal as well. *Cf. United States v. Guevara*, 941 F.2d 1299, 1299-1300 (4th Cir. 1991). Accordingly, to the extent Cohen argues that the omission of a reciprocal waiver invalidates his waiver, the claim is without merit.

B.

Having concluded that Cohen is bound by the terms of his appeal waiver, we turn to the question of whether the issues Cohen seeks to raise on appeal "fall within the scope of the appeal waiver." *See Blick*, 408 F.3d at 169. We conclude that they do.

The first issue Cohen seeks to raise on appeal — that the district court erred in fixing the monetary loss for purposes of calculating his advisory guideline range — clearly falls within the scope of the appeal waiver. Cohen specifically agreed "to waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, including any issues that relate to the establishment of the [applicable and advisory] Guideline range." J.A. 66. Indeed, Cohen agrees that, if this court concludes that his appeal waiver was knowing and intelligent, then his attack on the district court's loss calculation for purposes of determining his advisory sentencing guideline range would fall within the scope of his waiver. Accordingly, Cohen has waived his right to appeal this issue. *See Blick*, 408 F.3d at 170 ("[T]he fact that Blick claims in his net loss argument that the district court erred in its guideline calculation is of no moment here. . . . [A]n appeal waiver of the type involved in this case precludes a claim that the given sentence resulted from a misapplication of the Guidelines.") (internal quotation marks omitted).

With regard to the restitution order imposed during his sentencing, Cohen argues that his challenge falls outside the scope of his appeal waiver because "restitution" is not part of his "sentence." We disagree.

Although restitution enables victims to recover losses that might be available in civil litigation, restitution is nonetheless part of the criminal defendant's sentence. *See United States v. Bruchey*, 810 F.2d 456, 461 (4th Cir. 1987) ("Criminal restitution . . . is part of the sentencing process [and] . . . is fundamentally 'penal' in nature."); *United States v. Adams*, 363 F.3d 363, 365 (5th Cir. 2004) ("Restitution under the MVRA is a criminal penalty and a component of the defendant's sentence.") (internal quotation marks omitted); *United States v. Acosta*, 303 F.3d 78, 87 (1st Cir. 2002) ("It is undisputed that restitution is part of a sentence."); *United States v. Vandeberg*, 201 F.3d 805, 814

(6th Cir. 2000) ("Restitution is a part of one's sentence under the statutory scheme, and cannot be imposed without giving the defendant an opportunity to be heard."); *United States v. Ramilo*, 986 F.2d 333, 336 (9th Cir. 1993) ("Under the [Victim and Witness Protection Act or VWPA], restitution is part of the criminal sentence."); *United States v. Satterfield*, 743 F.2d 827, 837 (11th Cir. 1984) ("The history [of the VWPA] is replete with references to restitution as part of the criminal sentence. . . . There can be little doubt that Congress intended the restitution penalties of the VWPA to be incorporated into the traditional sentencing structure.").[3]

The language of the statutory restitution provisions also supports the view that restitution should be considered part of the sentence. Under § 3553(a) of Title 18, the district court is required to consider "the need to provide restitution to any victims of the offense," when "determining the particular sentence to be imposed." 18 U.S.C.A. § 3553(a)(7) (West 2000). The MVRA requires a district court, "when *sentencing* a defendant convicted of an offense described in subsection (c)," to order, "in addition to . . . any other penalty authorized by law, that the defendant make *restitution* to the victim of the offense." 18 U.S.C.A. § 3663A(a)(1) (emphasis added). And, § 3664 of Title 18 provides that a "*sentence* that imposes an order of *restitution* is a final judgment notwithstanding the fact that . . . *such a sentence* can subsequently be . . . appealed and modified under section 3742 [of Title 18, United States Code]." 18 U.S.C.A. § 3664(o)(1)(B) (West Supp. 2006) (emphasis added). This view is likewise consistent with our sentencing guidelines, which instruct courts to enter restitution for the full amount of an identifiable victim's loss if authorized under an appropriate statute. *See U.S. Sentencing Guidelines Manual* § 5E1.1(a) (2004).

---

[3]The Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C.A. § 3663A, was enacted in 1996 to amend the Victim and Witness Protection Act ("VWPA"), 18 U.S.C.A. § 3663, "by requiring district courts to impose 'full' restitution without considering the defendant's economic circumstances." *United States v. Karam*, 201 F.3d 320, 330 (4th Cir. 2000). These amendments, however, do not change the fundamental premise that restitution is part of a criminal defendant's sentence under either the VWPA or the MVRA.

In sum, we conclude that, as a general rule, a defendant who has agreed "[t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed," J.A. 66, has waived his right to appeal a restitution order. *See United States v. Broughton-Jones*, 71 F.3d 1143, 1146-47 (4th Cir. 1995) (implicitly finding that a defendant who waives the "right to appeal her sentence on [the] grounds [listed in 18 U.S.C.A. § 3742(a)]" is deemed to have waived the right to appeal a lawfully imposed restitution order); *see also United States v. Sharp*, 442 F.3d 946, 948-52 (6th Cir. 2006) (dismissing appeal of restitution order where defendant waived the right "to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally," but reserved the right to appeal a punishment in excess of the statutory maximum and an upward departure from the most applicable sentencing guidelines range, because restitution fell under neither exception); *United States v. Behrman*, 235 F.3d 1049, 1052 (7th Cir. 2000) (concluding that "[a]n agreement waiving appeal from 'any sentence within the maximum provided by Title 18' or similar language would foreclose [an appeal from the restitution order]"); *but see United States v. Phillips*, 174 F.3d 1074, 1075-76 (9th Cir. 1999) (finding no waiver of right to appeal restitution where defendant "knowingly and voluntarily waive[d] [his] right to appeal any sentence and restitution order imposed by the Court and the manner in which the Court determine[d] [his] sentence and restitution order, so long as the sentence is up to a net offense level of 12 following an adjustment for acceptance of responsibility," because the plea agreement contained no cap on restitution and the plea agreement was ambiguous as to the amount of damages the defendant might owe); *United States v. Cupit*, 169 F.3d 536, 539 (8th Cir. 1999) (per curiam) (considering challenge to restitution order despite defendant's agreement to "waive all rights to appeal whatever sentence is imposed," expressly declining to "resolve the waiver of restitution issue in this case"); *United States v. Ready*, 82 F.3d 551, 559-60 (2d Cir. 1996) (concluding that defendant did not waive his right to appeal a restitution order despite his "admittedly broad [ ]waiver of right to appeal 'whatever sentence is imposed'" because the terms of the plea agreement were ambiguous as to whether "sentence" included "restitution").

C.

Cohen's final claim is that the appeal waiver does not preclude his appeal from the restitution portion of his sentence because the *amount* of the restitution obligation exceeded the district court's authority under the MVRA.

Although we enforce appeal waivers that are knowing and voluntary, "even valid appeal waivers [do] not bar appellate review of every sentence." *Broughton-Jones*, 71 F.3d at 1146 (internal quotation marks omitted). A "defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court." *Id.* at 1147. Just as "a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race," a defendant could not be said to have waived his right to appellate review of a restitution order "imposed when it is not authorized by the [applicable restitution statute]." *Id.* This is because federal courts do not have the inherent authority to order restitution, but must rely on a statutory source. *See id.* at 1149. Because a restitution order that exceeds the authority of the statutory source "is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum, appeals challenging the legality of restitution orders are similarly outside the scope of a defendant's otherwise valid appeal waiver." *Id.* at 1147.

In this case, the statutory source of the district court's authority to impose restitution is the MVRA, which required the district court to order restitution for (1) those who are "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered" and (2) "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C.A. § 3663A(a)(2) (West 2000); *cf. United States v. Davenport*, 445 F.3d 366, 373 (4th Cir. 2006) (holding that court cannot order restitution under the MVRA to persons who are not victims of the offenses for which the defendant was convicted).

Cohen does not dispute that his offenses are ones for which restitution may be ordered. *See* 18 U.S.C.A. § 3663A(c)(1) (listing the

offenses covered by the MVRA as including "an offense against property under this title, . . . including any offense committed by fraud or deceit"). Rather, he argues that the district court exceeded its authority under the MVRA by ordering him to pay restitution to all victims of the conduct falling within the scope of the conspiracy count *as it is defined in the Second Indictment*. According to Cohen, although he pled guilty to the conspiracy count in the Second Indictment, he effectively limited his role in the conspiracy (and, thereby, the amounts he owed in restitution) in the plea agreement.

We are unpersuaded. Under the express terms of the plea agreement, as confirmed by the colloquy at the plea hearing, Cohen unconditionally pled guilty "to . . . count one of the [Second] Indictment filed April 15, 2004," J.A. 65, which charged Cohen and others with a conspiracy to defraud health care providers during the time frame from June 1999 through April 2004. Cohen also agreed to "[t]o make restitution to any victim in whatever amount the Court may order, pursuant to 18 U.S.C. §§ 3663 and 3663A." J.A. 65. During the guilty plea hearing, Cohen confirmed to the district court that he was pleading guilty to the conspiracy count as defined in the Second Indictment:

> Q. How do you plead to Count One of the April 15, 2004 original indictment [the Second Indictment]?
>
> A. Guilty, Your Honor.
>
> Q. Did you as charged in Count One [of the Second Indictment] on or about October 22, 1998 involve yourself in a conspiracy; that is, an agreement with at least two people involved, to commit healthcare fraud and at some point during this conspiracy knowingly perform one of the overt acts charged in the indictment?
>
> A. Yes, Your Honor.
>
> THE COURT: Thank you. You may be seated. Madame United States Attorney, I'll hear your proffer of the facts you believe the United States could prove at trial so I might

> have an independent factual basis for accepting Dr. Cohen's
> plea.

S.J.A. 867. At that point, the court was provided with the requisite independent factual basis for accepting the plea on the conspiracy count — the same factual recitation that was set forth as the factual stipulation in the plea agreement. By way of summary, Cohen admitted having an interest in a number of separate clinics (most of which listed the same address), practicing within those clinics, and hiring various medical doctors to also evaluate patients who visited the clinics. In addition, Cohen admitted that "[b]etween 2000 and 2002," he and at least one of these physicians personally "caused materially false and fraudulent claims for reimbursement to be submitted . . . to the insurance companies for needle electromyographies supposedly administered to patients, knowing that those services had not been administered." J.A. 76.

Although there is no such expressed intent in the language of the agreement, Cohen now claims that the intent of the "factual stipulation" was to limit his "offense of conviction" under the Second Indictment for purposes of computing his restitution obligation to false claims for "needle electromyographies" submitted to insurance companies "[b]etween 2000 and 2002" that amounted to no more than $7,165.00. J.A. 76. In other words, Cohen argues that the offense of conviction for purposes of the MVRA was restricted to Cohen's specific "admissions of guilt as specifically defined by the factual basis of his plea" contained in the plea agreement. As a result, Cohen argues, the district court was authorized to impose a restitution obligation of no more than $7,331.50 ($7,165.00 for the conspiracy count in the Second Indictment, plus $166.50 for the face amount of the claims involved in the two counts of mail fraud in the First Indictment).

We are unpersuaded by Cohen's attempt to use the factual stipulation, without more, to limit his role in the conspiracy to which he pled guilty. Cohen pled guilty to Count One of the Second Indictment, which charged an overarching conspiracy encompassing a wide array of fraudulent conduct that was not limited to false claims to insurance companies for needle electromyographies between 2000 and 2002. One of the overt acts charged in the conspiracy count of the Second

Indictment was that, "[o]n multiple occasions between January 2000 and February 2002, [Cohen] and a co-conspirator caused materially false claims to be filed with [the] insurance companies falsely claiming that medical doctors had administered electromyography procedures to patients" at two of Cohen's clinics. J.A. 36. But, there is no indication that, when Cohen admitted in his plea agreement that he submitted false claims to insurance companies for "needle electromyographies" during the time frame "[b]etween 2000 and 2002," J.A. 76, the intent of the parties was to effectively rewrite Count One of the Second Indictment and have Cohen plead guilty only to a conspiracy so limited in time and scope. Rather, we think the clear import of the language was to establish Cohen's admission that he "knowingly perform[ed] one of the overt acts charged in the [Second Indictment]," S.J.A. 867, for purposes of providing the requisite factual basis for acceptance of his plea to Count One of the Second Indictment as written. This is all that is needed to hold him responsible for the full extent of the conspiracy. *See United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996) (en banc) (explaining that the Government does not need to prove that the defendant had "full knowledge of all of [the conspiracy's] details," and that a defendant can be convicted of conspiracy "if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion, . . . even though he had not participated before and even though he played only a minor part") (internal quotation marks omitted).

In sum, we are satisfied that the district court complied with its mandatory statutory obligation to order restitution to all "victims" of the conspiracy to which Cohen pled, even if Cohen did not expressly admit to each and every overt act alleged to support it, and that the district court did not exceed its authority in doing so. *See* 18 U.S.C.A. § 3663A(a); *United States v. Newsome*, 322 F.3d 328, 341 (4th Cir. 2003) (rejecting defendant's claim that restitution should be limited to the harm caused by the substantive offense of which he was convicted, despite his conviction of a broader conspiracy; "under the MVRA, each member of a conspiracy that in turn causes property loss to a victim is responsible for the loss caused *by the offense*") (emphasis in original). The plea agreement contains no provision purporting to limit Cohen's restitution obligation and, on the contrary, the agreement clearly documents the parties' understanding that restitution would be a component of Cohen's sentence and that Cohen was

agreeing "[t]o make restitution to any victim in whatever amount the Court may order, pursuant to 18 U.S.C.A. §§ 3663 and 3663A." J.A. 65.

Because the district court's restitution award was within the scope of its authority under the MVRA, Cohen's challenge to the amount of restitution ordered falls within the scope of the appeal waiver contained in the plea agreement.

## III.

For the foregoing reasons, we grant the government's motion to dismiss Cohen's appeal in its entirety.

*DISMISSED*