**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4417**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellant,

          v.

MARIO AHLAZSHUNA DILLARD,

                    Defendant – Appellee.

**No. 17-4418**

UNITED STATES OF AMERICA,

                    Plaintiff – Appellee,

          v.

MARIO AHLAZSHUNA DILLARD,

                    Defendant – Appellant.

Appeals from the United States District Court for the Western District of Virginia, at Danville. Jackson L. Kiser, Senior District Judge. (4:15-cr-00019-JLK-1)

Argued:  March 22, 2018                    Decided:  May 30, 2018

Before KING, AGEE, and THACKER, Circuit Judges.

Dismissed in part, vacated in part, and remanded by published opinion. Judge Agee wrote the opinion, in which Judge King and Judge Thacker joined.

**ARGUED:** Laura Day Rottenborn, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellant/Cross-Appellee. Randy Virlin Cargill, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Rick A. Mountcastle, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellant/Cross-Appellee. Larry W. Shelton, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Roanoke, Virginia, for Appellee/Cross-Appellant.

AGEE, Circuit Judge:

Mario Ahlazshuna Dillard pleaded guilty to multiple counts of sexual exploitation of a child and one count of receipt and distribution of child pornography. The district court sentenced Dillard to 420 months' imprisonment, a term of supervised release, and also ordered him to pay restitution to one victim. From that sentence, Dillard appeals only the grant of $100,000 in restitution to his sole contact victim, and the Government appeals the district court's denial of restitution to Dillard's non-contact victims. Because Dillard's challenge to the amount of restitution awarded to the contact victim falls within the scope of his appeal waiver, we dismiss his appeal. And because the district court's reasons for denying restitution to the non-contact victims contradict the Supreme Court's instruction in *Paroline v. United States*, 572 U.S. __, 134 S. Ct. 1710 (2014), we vacate that restitution order and remand for further proceedings to determine an appropriate amount of restitution for each non-contact victim.

I.

Between July 2014 and October 2015, Dillard used a computer and mobile phone to access websites and instant messaging apps that allowed him to view, download, and upload child pornography. One website Dillard frequented required him to post child pornography at least once a month to maintain his membership.

On multiple occasions during this same period, Dillard sexually abused a five-year-old female ("Minor Girl A"). Dillard recorded the abuse—which included acts of vaginal and anal penetration—and uploaded those video files to the Internet.

3

In February 2016, Dillard was charged in a superseding indictment with multiple counts of sexual exploitation of a child, receipt and distribution of child pornography, and possession of child pornography. He pleaded guilty pursuant to a written plea agreement to three counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and (e), and to one count of receiving and distributing child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(b)(1). In exchange, the Government dismissed the remaining charges. The plea agreement contained the following appeal waiver provision:

> Knowing that I have a right of direct appeal of my sentence under 18 U.S.C. § 3742(a) and the grounds listed therein, I expressly waive the right to appeal my sentence on those grounds or on any ground. In addition, I hereby waive my right of appeal as to any and all other issues in this matter and agree I will not file a notice of appeal. I am knowingly and voluntarily waiving any right to appeal. By signing this agreement, I am explicitly and irrevocably directing my attorney not to file a notice of appeal. Notwithstanding any other language to the contrary, I am not waiving my right to appeal or to have my attorney file a notice of appeal, as to any issue which cannot be waived, by law. I understand the United States expressly reserves all of its rights to appeal. I agree and understand if I file any court document (except for an appeal based on an issue that cannot be waived, by law, or a collateral attack based on ineffective assistance of counsel) seeking to disturb, in any way, any order imposed in my case such action shall constitute a failure to comply with a provision of this agreement.

J.A. 1516 (emphasis omitted). In addition, the plea agreement's section covering restitution specifically noted Dillard's consent

> to pay restitution for the entire scope of my criminal conduct, including, but not limited to, all matters included as relevant conduct, which includes, but is not limited to, conduct pertaining to Minor Girl A . . . . In addition, I agree to pay any restitution required by law, including, but not limited to, amounts due pursuant to 18 USC §§ 2259, 3663, and/or 3663A. I understand and agree a requirement I pay restitution for all of the above-stated matters will be imposed upon me as part of any final judgment in this matter.

4

J.A. 1511.

Prior to accepting Dillard's plea, the district court conducted the required colloquy under Federal Rule of Criminal Procedure 11 to inform Dillard of the charges, penalties, and other rights affected by his plea, and to determine that Dillard understood and voluntarily consented to each provision of the plea agreement. In particular, the court reiterated the nature and effect of the appeal waiver, and Dillard indicated he understood. Thereafter, the district court accepted Dillard's plea and sentenced him to 420 months' imprisonment.

At sentencing, the district court also considered the parties' arguments as to an appropriate amount of restitution under 18 U.S.C. § 2259, which makes it mandatory for district courts to "direct the defendant to pay the victim . . . the full amount of the victim's losses." § 2259(b)(1), (4)(A). The Government sought restitution on behalf of Minor Girl A and seven non-contact victims whose images were part of Dillard's offense conduct.[1]

A letter from Minor Girl A's clinical counselor was submitted on behalf of the family and requested $3,590 to pay counseling and related expenses. The Government believed this sum "underestimat[ed] the extent of her damages," and it asked the court to order twice that amount, $7,180. J.A. 75.

---

[1] An eighth non-contact victim withdrew her request for restitution prior to entry of the restitution order. She was not part of the district court's restitution order and therefore is not part of this appeal.

Instead, the district court awarded Minor Girl A $100,000 in restitution, concluding that both requested amounts were "far too conservative to compensate [Minor Girl A] adequately for her present and future harms." J.A. 121. The court noted Dillard's sole responsibility for all losses Minor Girl A will suffer as a result of the sexual abuse and decision to disseminate it. After acknowledging that some part of her loss was as-yet "unknowable," the court observed it was also not "seriously dispute[d]" that Dillard's sexual abuse of Minor Girl A would have "long-term psychological effects [that] will require services." J.A. 122. To determine an appropriate amount of restitution, the court compared Minor Girl A's case to the records submitted on behalf of the non-contact victims. Because more time has elapsed between the non-contact victims' original sexual abuse and present day, they have had more time to document the losses arising from their abusers' decision to upload images to the Internet for continued circulation. The court observed that victims of this sort of offense, on average, suffered harm totaling well over one million dollars. In light of these considerations, the court found that "$100,000.00 [was] a very conservative figure representing [Minor Girl A's] likely future needs stemming from her abuse and exploitation." J.A. 122.

In addition to seeking restitution for Minor Girl A, the Government advocated restitution for seven non-contact victims.[2] As noted, these victims submitted extensive documentation concerning their aggregate losses from their original sexual abuse and the

---

[2] Dillard did not contribute to the creation of videos or images depicting the non-contact victims' childhood sexual abuse, but he subsequently received, possessed, and distributed it.

ongoing trade in images created during that abuse. Recognizing the difficulty in quantifying harm resulting from this sort of offense, the Government requested restitution for six victims based on the following formula: the total damages each victim documented divided by the number of defendants who had already been ordered to pay restitution plus one (to account for Dillard). The seventh non-contact victim asked for twice as much as this formulation yielded, but the Government supported that request, noting that her requested amount of restitution equaled less than 1% of her documented losses.

The district court concluded that the Government failed to meet its burden of proving that any amount of restitution was appropriate for the non-contact victims for two reasons. First, it held the Government failed to prove causation because it had not introduced any "evidence connecting [the non-contact victims'] significant harm to *this* Defendant." J.A. 122. In particular, the court noted there was no evidence any of the non-contact victims were ever aware of Dillard's conduct. Second, the court concluded that the Government's proposed formula for restitution was just a "stab in the dark" at setting an amount, and it expressed concern that the formula would overcompensate the victims. J.A. 123. The court explained that before it could set an amount of restitution, "under *Paroline*," the Government had to introduce evidence showing, "[a]t a minimum," "(a) how much restitution has been awarded by other courts to each victim, and (b) how much restitution has been collected by each victim." J.A. 123.

The Government and Dillard noted timely appeals. The Court has jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

II.

A.

Dillard challenges the district court's decision to award $100,000 in restitution to Minor Girl A, asserting that the record does not support an award of that amount given that the only evidence in the record as to Minor Girl A's anticipated loss is the counselor's letter seeking $3,590. The Government counters that this issue falls within the scope of Dillard's appeal waiver, so he is barred from raising it.

Where, as here, "there is no claim that the Government breached its obligations under the plea agreement," the Court will enforce an appeal waiver "to preclude a defendant from appealing a specific issue if the record establishes that the waiver is valid and the issue being appealed is within the scope of the waiver." *United States v. Archie*, 771 F.3d 217, 221 (4th Cir. 2014). The Court reviews the appeal waiver issue de novo. *United States v. Cohen*, 459 F.3d 490, 494 (4th Cir. 2006).

The record plainly establishes the validity of the appeal waiver, and Dillard does not contest its validity. Nor could he. The plea colloquy confirms that Dillard knowingly, intelligently, and voluntarily entered into the agreement to plead guilty. *See United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc) ("Statements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea constitute a formidable barrier to attacking the plea." (internal quotation marks omitted)). Dillard was represented by counsel during the entire process, counsel and the district court reviewed the agreement with Dillard, and Dillard represented to the court that he understood the terms of the

agreement. In particular, the court obtained Dillard's affirmation that he understood he was waiving "the right to appeal . . . , mean[ing] that this court is the end of the line for you" and "if you are dissatisfied or think something was done inappropriately or wrong, you have nowhere to turn." S.J.A. 1522. The waiver is thus valid and enforceable.

Next, we consider whether the issue Dillard seeks to appeal falls within the scope of the appeal waiver. Dillard contends the appeal waiver does not bar his challenge because he is claiming the district court exceeded its statutory authority by ordering an amount of restitution that the evidence does not support. Specifically, he argues that § 2259(b) authorizes restitution only for losses and the record does not support the district court's conclusion that Minor Girl A will incur $100,000 in losses as a result of his crime against her. We disagree.

The plea agreement unequivocally states—multiple times and in multiple ways—that Dillard waived "the right to appeal [his] sentence" on any grounds listed in 18 U.S.C. § 3742(a) "or on any ground." J.A. 1516. "[A]s a general rule, a defendant who has agreed to waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal whatever sentence is imposed, has waived his right to appeal a restitution order." *Cohen*, 459 F.3d at 497 (alteration, citation & internal quotation marks omitted).[3]

Nevertheless, we have recognized a limited exception to this general rule when a defendant contends that the district court "exceeds the authority of the statutory source"

---

[3] Section 3742(a) states that a defendant may appeal his sentence based on the argument that it was, among other things, "imposed in violation of law" or as the result of an incorrect Sentencing Guidelines range calculation.

9

in selecting the amount of restitution ordered. *Id.* at 498. This exception in the context of a restitution order follows from the same reasoning that allows a defendant subject to an appeal waiver to nonetheless appeal on the ground that the district court sentenced him to a term of imprisonment exceeding the statutory maximum: in both circumstances, the sentence would be "illegal." *Id.*

In *Cohen*, the source of the district court's authority to order restitution was the Mandatory Victims Restitution Act ("MVRA"), which

> required the district court to order restitution for (1) those who are "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered" and (2) "in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."

*Id.* (quoting 18 U.S.C. § 3663A(a)(2)). Cohen argued "the district court exceeded its authority under the MVRA by ordering him to pay restitution to all victims of the conduct falling within the scope of the conspiracy count as it is defined in the Second Indictment" as opposed to a more limited scope established by his plea agreement. *Id.* (emphasis omitted). The Court disagreed with Cohen's assertion and determined the limited exception for exceeding the authority of the statutory source had no application in that case. *Id.* at 498–500. Consequently, the Court concluded "the district court's restitution award was within the scope of its authority under the MVRA, [and it also concluded] Cohen's challenge to the amount of restitution ordered [fell] within the scope of the appeal waiver." *Id.* at 500.

10

Dillard's argument does not fall within the narrow exception noted in *Cohen*. To the contrary, the source of the district court's authority to order restitution was clear under § 2259(b), which required it to order restitution for "the full amount of the victim's losses as determined by the court." § 2259(b)(1). The "full amount of the victim's losses"

> includes any costs incurred by the victim for—(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense.

§ 2259(b)(3). The statute thus authorizes the "full amount" of Minor Girl A's losses, leaves to the district court the authority to determine those losses, and includes—but is not limited to—the types of losses listed in subsection (b)(3). And while the statute informs the court's analysis as to a proper amount of restitution, it sets no numeric limits on the amount of restitution that can be ordered.

The district court's explanation for the amount of restitution it ordered falls within this statutory authority, as the court determined that "the long-term psychological effects [of Dillard's conduct on Minor Girl A] will require services that . . . should not be borne solely by [her] and her family." J.A. 122. Moreover, the court found that $100,000 was a "very conservative figure" as her actual losses would likely be much higher. J.A. 122. In short, § 2259(b) authorized restitution for the losses identified by the court in the amount awarded by the court. As such, the court did not exceed its statutory authority in ordering $100,000 in restitution to Minor Girl A.

11

To be sure, the district court awarded Minor Girl A more than the amount her family or the Government had sought, but that does not make the amount of restitution beyond the authority of the statutory source. The court explained the reasons why it found a higher award was appropriate, including Dillard's culpability for all future harm and the "roughly average damage to a victim of child pornography of $1,243,296.54" over the course of her lifetime. J.A. 121. In view of Minor Girl A's youth and the relatively short amount of time that had elapsed between Dillard's offenses and the sentencing hearing, the district court recognized that her losses would be higher than the amount requested, and it awarded a different amount. That award was well within the court's statutory authority.

Because the restitution award to Minor Girl A was within the scope of the district court's authority under § 2259, Dillard's challenge to the amount of the award falls within the scope of the appeal waiver. *See Cohen*, 459 F.3d at 500. We therefore dismiss his appeal in its entirety.

B.

Turning to the Government's appeal—it contends the district court abused its discretion in denying restitution to the seven non-contact victims who sought it. *See United States v. Llamas*, 599 F.3d 381, 387 (4th Cir. 2010) (recognizing that we review restitution orders for abuse of discretion). "A district court abuses its discretion when it acts arbitrarily or irrationally, fails to consider judicially recognized factors constraining its exercise of discretion, relies on erroneous factual or legal premises, or commits an error of law." *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007). Here, although

12

the district court cited *Paroline v. United States*, 572 U.S. __, 134 S. Ct. 1710 (2014), it did not follow the Supreme Court's instructions for the consideration of causation or for calculating a restitution award under § 2259 in cases involving non-contact victims of child pornography. In short, the court abused its discretion, and we therefore vacate and remand its restitution order as to the non-contact victims.

To understand the district court's errors, we look to *Paroline*, where the defendant possessed child pornography that he had no role in creating.[4] Moreover, he was not the sole possessor of the victim's images; instead, he was one of an unknown but large number of individuals who did so. The question presented to the Supreme Court was "what causal relationship must be established between the defendant's conduct and a victim's losses for purposes of determining the right to, and the amount of, restitution under § 2259." 134 S. Ct. at 1716. The Court held that the statutory language confirmed that restitution was "proper under § 2259 only to the extent the defendant's offense proximately caused a victim's losses." *Id.* at 1722. That conclusion led the Court to the "difficult question of how to apply the statute's causation requirements" in the atypical scenario faced by a victim of child pornography. *Id.* In short, victims can often prove aggregate losses, but face difficulty in proving losses "that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed

---

[4] Dillard was convicted of more than possessing child pornography; he received and distributed it. While this difference may be relevant in Dillard's relative role in his victims' harm, Dillard and Paroline are in similar positions for purposes of assessing restitution in the context of non-contact victims of child pornography.

and will in the future possess the victim's images but who has no other connection to the victim." *Id.*

To address these concerns about proving causation in fact, the Supreme Court carved a middle ground that recognized the impracticalities of relying on a but-for causation standard and the severity of adopting an aggregate causation standard. *Id.* at 1722–28. The basis for the Court's balance was the reality that "[w]hile it is not possible to identify a discrete, readily definable incremental loss [any one defendant] caused, it is indisputable that he was a part of the overall phenomenon that caused her general losses." *Id.* at 1726. The Court thus held—

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses. The amount would not be severe in a case like this, given the nature of the causal connection between the conduct of a possessor like Paroline and the entirety of the victim's general losses from the trade in her images . . . . It would not, however, be a token or nominal amount. The required restitution would be a reasonable and circumscribed award imposed in recognition of the indisputable role of the offender in the causal process underlying the victim's losses and suited to the relative size of that causal role.

*Id.* at 1727.

The district court misunderstood *Paroline*'s holding with respect to the Government's burden of proving causation. For example, the district court based its decision on the record containing "no evidence connecting [the non-contact victims'] significant harm to *this* Defendant" or that they "were actually aware that this Defendant

14

possessed evidence of their abuse." J.A. 122. But *Paroline* expressly disavowed any such requirement. The parties in *Paroline* stipulated that the victim was unaware of the defendant's behavior, 134 S. Ct. at 1723, yet the Supreme Court *still* recognized that the Government had satisfied its burden as to causation based on the analysis just recited above. By holding the Government to a standard of causation antithetical to the one announced in *Paroline*, the district court's first reason for denying restitution to Dillard's non-contact victims cannot withstand review. At bottom, the Government satisfied its burden of causation by the uncontested evidence that Dillard's offense conduct included the seven non-contact victims' images and that these victims have "outstanding losses caused by the continuing traffic in those images." *Paroline*, 134 S. Ct. at 1727; *see also United States v. Emmert*, 825 F.3d 906, 911 (8th Cir. 2016) (rejecting defendant's argument that the Government failed to establish proximate causation because that argument was "unavailing in light of *Paroline*, which recognized the existence of ongoing harm each time someone possesses images of a victim" of child pornography).

The second reason the district court denied restitution was its belief that it could not determine an appropriate amount of restitution based on the information before it. Specifically, the court identified two obstacles: (1) it was missing certain minimum information it needed to determine what amount to award, and (2) the Government's proposed formula for calculating a restitution award was "nothing more than guesswork in the guise of a mathematical formula." J.A. 123. As we explain, neither explanation was an appropriate basis for denying restitution in this case.

15

*Paroline* recognized the inherent imprecision of calculating an appropriate amount of restitution in cases involving non-contact victims of child pornography, and it provided courts with guidance on how to undertake their statutory duty:

> [A] court must assess as best it can from available evidence the significance of the individual defendant's conduct in light of the broader causal process that produced the victim's losses. This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment. But that is neither unusual nor novel[.]

134 S. Ct. at 1727–28. This approach does not require a "precise algorithm for determining the proper restitution amount." *Id.* at 1728. Instead, "district courts might, as a starting point, determine the amount of the victim's losses caused by the continuing traffic in the victim's images" and "then set an award of restitution in consideration of factors that bear on the relative causal significance of the defendant's conduct in producing those losses." *Id.* To determine the causal significance of the defendant's conduct, the Supreme Court provided several "rough guideposts" that "might" be relevant to that determination in a particular case. *Id.* Those guideposts include "the number of past criminal defendants found to have contributed to the victim's general losses," "whether the defendant reproduced or distributed images of the victim," and "how many images of the victim the defendant possessed." *Id.* But these factors are just that: factors. They "need not be converted into a rigid formula, especially if doing so would result in trivial restitution orders." *Id.*

Here, the district court looked at the evidence before it and concluded it could not award any restitution unless it possessed "[a]t a minimum" the amount of restitution awarded to each victim in other cases and the amount of restitution collected by each

16

victim in those cases. *See* J.A. 123. The district court's conclusion that these two factors were the minimum evidence required is inconsistent with *Paroline*. Neither of these factors appears on the list of "rough guideposts" the Supreme Court concluded might be relevant to determining an appropriate amount of restitution. If the Supreme Court didn't recognize them as evidentiary minimums in *Paroline*, it's difficult to understand how—as the district court concluded—*Paroline* requires these as evidentiary mandates. While this sort of information may be relevant among other factors in a particular case if it is known and made available to the court, it was not in the record here, and there is no indication from *Paroline* that the absence of such potentially relevant factors should preclude restitution. To the contrary, even the guideposts the Supreme Court articulated were suggestions rather than prerequisites as there "cannot be a precise mathematical inquiry." 134 S. Ct. at 1728. The conclusion that the district court drew from the absence of the two pieces of information it identified is not supported by *Paroline* and represents an error of law amounting to abuse of discretion.

The second problem the district court identified in calculating the proper amount of restitution was its disagreement with the Government's proposed formula for determining the amount of restitution to award each non-contact victim. In this appeal we need not address the propriety of the proposed formula over other methods because of the district court's more fundamental error—that because it disagreed with the Government's proposed method of determining an appropriate amount of restitution, the court decided not to order any restitution to the non-contact victims. That decision abdicated the district court's responsibility under § 2259, which instructs that courts "*shall* order restitution"

17

and "*shall* direct the defendant to pay the victim," and that "[t]he issuance of a restitution order under this section is *mandatory*." § 2259(a), (b)(1), (b)(4)(A) (emphases added). Moreover, the district court is charged with the responsibility of determining the proper amount of restitution in each case. § 2259(b)(1). It was the court's responsibility to use its "discretion and sound judgment" to determine an appropriate amount for each non-contact victim. *Paroline*, 134 S. Ct. at 1728. And where, as here, it was uncontested that the individuals seeking restitution were Dillard's victims and had outstanding losses associated with the continued trade in their images, they were entitled by statute to some non-nominal amount of restitution. *See id.* at 1727–28.

The district court was not faced with a binary choice of accepting or rejecting the Government's proposed calculation of an appropriate amount of restitution for each non-contact victim. If the district court thought the Government's proposed restitution awards were too high because they did not account for something that concerned the court, it should have adjusted the amount and explained its reasoning rather than refusing to order any amount of restitution.

The nature of the district court's errors make it unnecessary for us to consider whether the Government's proposed formula accomplishes § 2259's objectives in a manner consistent with *Paroline*'s principles. Upon remand, the district court can consider that question in the first instance if the Government elects to rely on the same formula, and the court will have discretion to vary from the amount requested as well. Post-*Paroline*, our sister courts of appeals have approved of various methods of determining a restitution award that is not "token or nominal," *Paroline*, 134 S. Ct. at

18

1727, but which also reflects a non-contact offender's role in the overall harm to victims of child pornography. *See, e.g.*, *United States v. Sainz*, 827 F.3d 602, 606 (7th Cir. 2016); *United States v. Grovo*, 826 F.3d 1207, 1220–22 (9th Cir. 2016); *United States v. Evans*, 802 F.3d 942, 949–50 (8th Cir. 2015); *United States v. Rogers*, 758 F.3d 37, 39–40 (1st Cir. 2014) (per curiam). District courts have great discretion in selecting an appropriate methodology, and the district court should have an opportunity to exercise that discretion here. We will not opine on whether a particular method accomplishes *Paroline*'s goals in a given case until that issue is properly before us, and it is not necessary to reach that question here.

\* \* \* \*

Because the district court misapplied *Paroline* in refusing to award any amount of restitution for Dillard's non-contact victims, it abused its discretion. We therefore must vacate and remand that part of the restitution order.

III.

For the reasons set out above, we dismiss Dillard's appeal because it is barred by the appeal waiver in his plea agreement. But the Government's appeal is well taken, and we therefore vacate the restitution order as to the non-contact victims and remand for further proceedings consistent with this opinion.

*DISMISSED IN PART, VACATED IN PART, AND REMANDED*

19