**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-6254**

---

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

LARRY ANTONIO BURLEIGH,

Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.  Henry E. Hudson, Senior District Judge.  (3:11-cr-00049-HEH-2)

---

Argued:  January 29, 2025                         Decided:  July 31, 2025

---

Before NIEMEYER, GREGORY, and QUATTLEBAUM, Circuit Judges.

---

Affirmed by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Niemeyer joined. Judge Gregory wrote a dissenting opinion.

---

**ARGUED:** Donald Russell Pender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Vetan Kapoor, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.  **ON BRIEF:** Mary E. Maguire, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charlottesville, Virginia, for Appellant.  Jessica D. Aber, United States Attorney, Joseph Attias, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee.

QUATTLEBAUM, Circuit Judge:

Larry Antonio Burleigh argues that the district court abused its discretion in denying his motion for compassionate release by inadequately explaining its reasoning and by misapplying our law. We disagree. Supreme Court and Fourth Circuit precedent do not require district courts to address every facet of every argument a defendant makes for compassionate release. All that is required is enough to permit meaningful appellate review. Here, the district court not only met that bar; it surpassed it. Also, the district court correctly applied our precedent on compassionate release and First Step Act stacked sentences. So, we affirm.

## I.

### A.

On December 3, 2010, Burleigh, Kshawn Hill and a juvenile approached a car that a man we will refer to as "D.O." had just parked near his home in Richmond, Virginia. Burleigh banged on D.O.'s driver's side window with a short-barreled Mossberg Model 500C, 20-gauge shotgun. He and the other two attackers began to yell at D.O., commanding that he open the car door. When D.O. did not immediately comply, Burleigh "opened the driver's side door and put the firearm in [D.O.'s] face." J.A. 36. The attackers "ordered [D.O.] to get in the backseat," which he did. J.A. 36. They got into the car after him— Burleigh in the backseat with D.O., Hill in the driver's position and the juvenile in the front passenger seat.

As Hill began to drive away from D.O.'s house, the attackers ordered D.O. to give them his wallet. He did but only had $8 in cash with him. So, they drove D.O.'s car to an

2

ATM, where the attackers ordered D.O. to withdraw cash at gunpoint. He withdrew $300 and handed them the money. They drove to another ATM, where the attackers again ordered D.O. to withdraw cash. He withdrew $200 and gave them that, too. At a third ATM, D.O. attempted to withdraw more cash as ordered, but this time, the ATM would not allow him to withdraw any money. The attackers then drove D.O. to a 7-Eleven, where they ordered him to use the ATM there. D.O. couldn't withdraw money from that ATM, either.

The attackers then drove away and released D.O. on the street. He walked to a nearby emergency phone to call the police.

During the ordeal, Burleigh punched D.O. multiple times. He shoved the short-barreled shotgun into D.O.'s mouth and forced him to suck on its barrel. And he threatened to kill D.O. and his family.

Later that night, a Richmond Police Department officer saw D.O.'s car driving through downtown Richmond. The officer pursued the vehicle at high speed. Eventually, Burleigh and the two others stopped the car, got out and fled. The police quickly caught and arrested them. The officers searched D.O.'s vehicle, finding a "short-barreled shotgun made from a Mossberg, model 500C, 20 gauge." J.A. 38.

**B.**

A federal grand jury issued a 13-count indictment against Burleigh.[1] In a written agreement, Burleigh pled guilty to Count 3—carjacking in violation of 18 U.S.C. § 2119—

---

[1] In addition to charging Burleigh and Hill jointly with numerous counts, the indictment also charged Hill with one count of robbery affecting commerce and one count of possessing a firearm in furtherance of a crime of violence. At Burleigh's sentencing hearing, the remaining counts (Counts 5, 7, 8, 9, 11, 12 and 13) were dismissed.

3

and Counts 4 and 6, both of which involved possessing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c).

The United States Probation Office prepared a presentencing report that calculated a guidelines range of 100–125 months for Count 3, 120 months for Count 4 and 300 months for Count 6. The PSR also noted that the sentences for Counts 4 and 6 were mandatory consecutive terms. Last, it stated that Burleigh had nine criminal history points and a criminal history category of four.

Prior to sentencing, D.O. also submitted a statement that described the ordeal from beginning to end, as well as a separate statement describing the PTSD and anxiety he now suffers from because of the attack. Also, the parties each submitted written sentencing requests. The government asked for a sentence within the 100–125-month guidelines range for Count 3, to run consecutive to the mandatory 120-month and 300-month sentences for Counts 4 and 6. Burleigh moved for a downward variance for Count 3, recognizing he would receive mandatory minimum sentences of 120 months and 300 months for Counts 4 and 6.

At the sentencing hearing, D.O. and his wife testified. D.O.'s wife said that D.O. was now "scared," "irritable" and "jumpy all the time." J.A. 57. She said that he was no longer "the same man [she] married." J.A. 57. D.O. stated that the attack "changed [his] life" permanently. J.A. 58. He said "[s]udden noises make [him] jump out of his skin." J.A. 58. He described not sleeping well at night, anxiety going to new places and difficulty forming sentences when stressed. He also testified that he was struggling to do a good job at work due to persistent anxiety attacks.

4

The government reiterated its position from its sentencing submission and argued against Burleigh's variance request, explaining that Burleigh's crime was unusually violent. Burleigh's attorney largely repeated the position outlined in his motion for a downward variance, adding that the mandatory minimum sentences for Counts 4 and 6 were harsh enough, and that his client had confessed, pled guilty and cooperated with the police.

The district court explained that it had "spent a great deal of time trying to determine whether or not [it] should give [Burleigh] notice of an upward variance in this case." J.A. 65. However, the court stated that it "decided not to and to sentence within the Guidelines," despite the fact that it "would have no compunction whatsoever in giving [Burleigh] life for the misery he visited on [D.O.]." J.A. 65–66. Burleigh briefly spoke, acknowledging that his criminal conduct would impact D.O. for the rest of his life and apologizing to D.O. for the harm he had caused. After the court noted that it was disturbed by the fact that Burleigh "was only out of jail for 27 days" at the time of these crimes and that it believed Burleigh "pose[d] a major risk being out on the street as a free person," it announced Burleigh's sentence. J.A. 67.

The district court explained that it had considered the advisory guidelines, the factors listed in 18 U.S.C. § 3553(a), the nature and circumstances of the offense and Burleigh's prior criminal history. It then consecutively sentenced Burleigh to 125 months for Count 3, 120 months for Count 4 and 300 months for Count 6 for a total term of

5

imprisonment of 545 months. And the court explained that its sentence was adequate but not longer than necessary.[2]

## C.

Burleigh was remanded to federal custody on the day of his sentencing—September 9, 2011—to begin serving his sentence. Roughly nine years later, he moved for compassionate release pro se. The district court appointed Burleigh counsel, but before that motion was fully briefed, Burleigh moved for compassionate release again. In his second motion, Burleigh argued that his rehabilitation while in prison, his young age at the time of his offense and his lengthy stacked § 924(c) sentences constituted extraordinary and compelling reasons to reduce his sentence. As to his § 924(c) sentences, Burleigh argued that he would not have received such a long sentence had he been sentenced after the First Step Act, which prospectively prevented stacking multiple § 924(c) mandatory minimums in convictions from a single prosecution. *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (codified as amended at 18 U.S.C. § 3582(c)(1)(A)). He also pointed to our *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) decision that held that the length of, and disparity between, pre- and post-First Step Act § 924(c) sentences can constitute extraordinary and compelling reasons for compassionate release. According to Burleigh, the fact that his stacked § 924(c) sentences made up 420 months of his total sentence created extraordinary and compelling circumstances. Burleigh also argued that the § 3553(a) factors warranted compassionate release.

---

[2] The sentence also included a five-year term of supervised release.

6

The district court issued a ten-page order denying Burleigh's motions for compassionate release. It first concluded that Burleigh had not shown extraordinary and compelling circumstances warranting a sentence reduction. The court acknowledged Burleigh's argument that his rehabilitation, youth and stacked § 924(c) sentences created extraordinary and compelling reasons to reduce his sentence when considered together. Then, the court described Burleigh's rehabilitation efforts in detail, specifically noting his church involvement, his completion of drug abuse classes, positive comments from prison staff about Burleigh and his apology letter to the victim recognizing the harm he caused. After that, the court commended Burleigh for his rehabilitation, even mentioning his work mentoring other inmates. But after a two-page discussion of this issue, the court explained that "rehabilitation should be the rule, not the exception." J.A. 197. And it concluded that Burleigh's rehabilitation arguments did not clear the extraordinary and compelling hurdle.

Next, the court addressed Burleigh's age. It recognized that both Congress and the Supreme Court have acknowledged that young people's neurobiology may leave them more susceptible to making poor decisions. Relatedly, it also observed that some scientists believe that young people's "decision-making and emotional control faculties" are perhaps not fully developed until age 25. J.A. 198. But the court then noted that Burleigh was over 24 years old when he committed these crimes. Thus, it concluded, Burleigh's brain was either "fully mature or at least nearly so at that time." J.A. 198. And it emphasized that Burleigh committed this crime less than a month after he had spent a year in prison for committing other drug- and gun-related crimes. Ultimately, the court concluded that

7

Burleigh's age did not constitute an extraordinary and compelling reason to reduce his sentence in light of his criminal history and the seriousness of his crime.

Finally, the district court discussed Burleigh's stacked § 924(c) convictions. It recognized Burleigh's argument—that since the First Step Act changed the law to prevent stacking § 924(c) convictions resulting from a single prosecution, his sentence was much longer than he would receive today. But the court observed that *McCoy* does not require compassionate release of all defendants with stacked § 924(c) sentences. And it concluded that in Burleigh's case, a sentence reduction was not warranted because of the serious, violent nature of his crime and its impact on the victim, as well as Burleigh's criminal history.

The district court then turned to the § 3553(a) factors. It held that the nature of Burleigh's crime, the harm done to the victim and the fact that Burleigh had only served 27% of his sentence weighed against a sentence reduction. Because of those factors, the court explained that a reduction of Burleigh's sentence would not "promote respect for the law, deter criminal conduct, and protect the public." J.A. 200. The district court once again acknowledged Burleigh's significant rehabilitation, the letters submitted by prison officials on his behalf and his record of good behavior while incarcerated. But it held that this rehabilitation evidence still did not outweigh the other factors it had already addressed.

8

The court then emphasized that it retained discretion to grant or deny Burleigh's motion, even after the First Step Act and *McCoy*. Exercising that discretion, it denied Burleigh's motion.[3] This appeal followed.[4]

## II.

On appeal, Burleigh makes three arguments. First, Burleigh argues the district court failed to properly consider the First Step Act's changes to § 924(c) sentences. He contends the court completely disregarded these changes as well as the sheer and unusual length of the sentence he received. And relatedly, Burleigh insists the court failed to explain why his sentence should not be lowered since it was so much higher than what it would be if he was sentenced today. Second, Burleigh argues that the district court only considered his sentence disparity, age and rehabilitation individually, not collectively. Third, Burleigh argues that the district court only devoted "one cursory paragraph" to the § 3553(a) factors, in which it failed to address the disparity between his sentence and what his sentence would be after the First Step Act and his extensive post-sentencing rehabilitation. Op. Br. at 14. After reviewing the legal framework for compassionate release motions and the standard for reviewing decisions on such motions, we will address each argument in turn.

---

[3] The district court denied Burleigh's first motion, which was never fully briefed, as moot.

[4] We have jurisdiction over this appeal under 28 U.S.C. § 1291. *See United States v. Ferguson*, 55 F.4th 262, 266 (4th Cir. 2022).

**A.**

Congress authorized "compassionate release" in 18 U.S.C. § 3582(c)(1)(A). That provision begins with the general rule that a "court may not modify a term of imprisonment once it has been imposed." *Id.* It then describes an exception to that rule, in which courts may consider motions made by defendants who have exhausted their administrative remedies and are seeking a sentence modification. *Id.*; *see also United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022). A court can grant a compassionate release motion if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" and (3) that the § 3553(a) factors weigh in favor of granting relief, "to the extent that they are applicable." *See* § 3582(c)(1)–(2).

Elements one and two are supposed to work together. Because "[§] 3582(c)(1)(A)(i) does not attempt to define the 'extraordinary and compelling reasons' that might merit compassionate release," the "Sentencing Commission, pursuant to authority granted it by Congress," does so instead. *McCoy*, 981 F.3d at 276 (quoting § 3582(c)(1)(A)(i)). But that only works when there is an applicable policy statement. And at the time of Burleigh's sentence, there was none.[5] Without a policy statement applicable to compassionate release

---

[5] The Sentencing Commission recently amended the applicable policy statement, U.S.S.G. § 1B1.13, which became effective as of November 1, 2023. *See* 88 Fed. Reg. 28254, 28254–55 (May 3, 2023) (broadening § 1B1.13 to apply to motions made by the Bureau of Prisons or the defendant); *see also* U.S.S.G. § 1B1.13; *United States v. Davis*, 99 F.4th 647, 654 (4th Cir. 2024) (explaining that the Sentencing Commission "promulgated amendments to U.S.S.G. § 1B1.13" in May 2023). Prior to this recent amendment, the applicable policy statement only defined extraordinary and compelling reasons with regard to compassionate release motions made "[u]pon the motion of the

10

motions made by defendants, the district court had discretion to make its "own independent determination of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A) . . . ." *Id.* at 284 (cleaned up).

If a district court finds extraordinary and compelling circumstances warrant a sentence reduction, it must then consider whether the factors in § 3553(a) support such a decrease. The § 3553(a) factors include "the nature and circumstances of the offense" as well as the defendant's history and characteristics, the "kinds of sentences available," and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(1), (3), (6). They also include the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense," to deter criminal conduct, to protect the public and to provide the defendant with appropriate resources such as "medical care" and "vocational training." *Id.* § 3553(a)(2). But district courts are only required to address the § 3553(a) factors "to the extent that they are applicable." § 3553(a). Importantly, "[d]istrict courts 'enjoy[] broad discretion' in analyzing the § 3553(a) factors when deciding a § 3582(c)(1)(A) motion." *Bethea*, 54 F.4th at 834 (quoting *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021)).

---

Director of the Bureau of Prisons" and did not address motions made by prisoners themselves. *McCoy*, 981 F.3d at 276 (quoting § 1B1.13).

**B.**

We review a district court's decision to grant or deny a motion for compassionate release brought under § 3582(c)(1)(A)(i) for abuse of discretion.[6] *See Kibble*, 992 F.3d at 330. We regularly recite this standard. But sometimes, when we repeat words frequently, we fail to consider their importance. To avoid that, we review what abuse of discretion means. When reviewing under that standard, we "may not substitute our judgment for that of the district court." *United States v. Vidacak*, 553 F.3d 344, 348 (4th Cir. 2009) (cleaned up). Instead, we may only find a district court abused its discretion when it acted "arbitrarily or irrationally, fail[ed] to consider judicially recognized factors constraining its exercise of discretion, relie[d] on erroneous factual or legal premises, or commit[ed] an error of law." *United States v. Dillard*, 891 F.3d 151, 158 (4th Cir. 2018) (quoting *United States v. Delfino*, 510 F.3d 468, 470 (4th Cir. 2007)). "Put simply, an abuse of discretion is when the district judge is 'fundamentally wrong,'" not when we disagree with the district court's judgment. *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 198 (4th Cir. 2022) (quoting *Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 769 F.3d 944, 957 (7th Cir. 2014)).

---

[6] Burleigh suggests in his opening brief that we should review his sentence for substantive and procedural reasonableness, as well. He abandons that argument on reply, agreeing with the government that we have never held that denials of motions under § 3582(c)(1)(A)(i) should be reviewed for procedural and substantive reasonableness. Thus, we review only for abuse of discretion.

## C.

With that background and our standard of review in mind, we turn to the merits of Burleigh's three challenges.

## 1.

First, we disagree with Burleigh's contention that the district court disregarded the distinction between § 924(c) sentences before and after the First Step Act, neglected the length of his sentence and never addressed why the disparity between his old and potentially new sentences should not be corrected. The plain language of the district court's order contradicts Burleigh's argument. By its express terms, the district court considered, and simply did not find compelling, Burleigh's argument that his pre-First Step Act sentence was lengthy and grossly disparate from the sentence he would receive if sentenced today.

Frankly, it is difficult to understand why Burleigh claims the court disregarded these points. Far from ignoring the distinction between § 924(c) sentences before and after the First Step Act and the length of Burleigh's sentence, the district court addressed those issues head on. In its order denying Burleigh's motion, the district court said:

> The Court finds that Defendant's sentence does not justify a reduction. Even considering the changes to § 924(c) under the First Step Act, the Court still concludes that Defendant's sentence of 420 months of incarceration on Counts Four and Six is appropriate in this case. Although Defendant's sentence under the First Step Act may carry a different mandatory minimum today than at the time of his original sentencing, there are still a panoply of other considerations that make compassionate release inappropriate. As mentioned previously, Defendant's crime was egregious, having a significant and lasting impact on the victim. . . . This seriousness, coupled with Defendant's significant criminal history and being on supervised probation

13

for other serious offenses at the time he committed the underlying crime, weighs against any sentence reduction.

J.A. 199–200.

As this excerpt from the order makes clear, the district court considered the length of Burleigh's sentence. It noted that the sentence for the § 924(c) counts was 420 months. The court also explicitly recognized that Burleigh's sentence would be lower if he were sentenced today. And it explained why it felt the sentence disparity in Burleigh's case did not warrant compassionate release. From the district court's standpoint, compassionate release was not appropriate in Burleigh's case because of the seriousness of his crime, its impact on D.O. and his wife and Burleigh's criminal history—namely that he committed the offense of conviction while "on supervised probation for other serious offenses." J.A. 199–200.

While our dissenting colleague acknowledges that the district court stated that the First Step Act lowered the applicable mandatory minimum from the one in place when Burleigh was sentenced, he criticizes the court for not specifying the length of the sentence disparity. But our law does not require that. In fact, requiring the court to expressly state that the difference between the two mandatory minimums was 15 years, when the court pointed out that his mandatory minimum would have been lower after the First Step Act, would amount to hollow box checking.

The dissent also criticizes the district court for not explaining how the lower mandatory minimum impacted its analysis. But it did. It said, "[a]lthough Defendant's sentence under the First Step Act may carry a different mandatory minimum today than at

14

the time of his original sentencing, there are still a panoply of other considerations that make compassionate release inappropriate." J.A. 199–200. Then, it listed those reasons.

This more than satisfies our precedent. In *United States v. High*, 997 F.3d 181 (4th Cir. 2021), we rejected the defendant's argument that the district court was required to "*acknowledge and address* each of the defendant's arguments on the record" when ruling on his motion for compassionate release. *Id.* at 189 (emphasis in original). Instead, we held that "there are cases in which a 'minimal' explanation suffices, while 'in other cases, more explanation may be necessary.'" *Id.* (quoting *Chavez-Meza v. United States*, 585 U.S. 109, 116 (2018)). And we explained that the "touchstone must be whether the district court set forth enough to satisfy our court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *Id.* at 190 (cleaned up).

What's more, satisfying that touchstone is not difficult. A district court can consider an argument without setting forth its reasoning in detail on the record. *Id.* at 189–90; *see Chavez-Meza*, 585 U.S. at 114, 119 (holding that a district court ruling on a motion for a sentence modification by checking a box on a form was sufficient). And a district court need not address every single argument made by a defendant so long as we are able to engage in meaningful appellate review considering what the district court chose to say. *See High*, 997 F.3d at 188; *see also United States v. Concepcion*, 597 U.S. 481, 501 (2022) (explaining in the context of a First Step Act motion for a sentence reduction that district courts may "dismiss arguments that [they do] not find compelling without a detailed explanation" and need only "articulate . . . a brief statement of reasons"); *United States v.*

15

*Reed*, 58 F.4th 816, 823 (4th Cir. 2023) (noting that *Concepcion* "sets a low bar for district courts"). Further, when a district court denies a motion and states its rationale, implicit within its explanation is the fact that arguments or factors it does not address or addresses only briefly were not persuasive to it. *See United States v. Mangarella*, 57 F.4th 197, 203–04 (4th Cir. 2023) (explaining that omitting an argument "does not by itself establish that the district court failed to *consider* [it]" (emphasis in original)). Thus, we hold that the district court did not abuse its discretion in deciding that Burleigh had not met his burden of showing extraordinary and compelling reasons to warrant a sentence reduction.

Resisting this conclusion, Burleigh argues that *McCoy* requires a different result. He seems to think that after that decision, district courts need to spend more time discussing the length of a particular sentence and provide continued justification of a sentence that would be shorter if issued today. Similarly, the dissent implies that after *McCoy*, district courts must address "(1) the severity of the sentence, or in other words, 'the sheer and unusual length' of the defendant's sentence; and (2) 'the gross disparity between [that] sentence[] and the sentence[] Congress now believes to be an appropriate penalty for the defendant['s] conduct' after passage of the First Step Act." Diss. Op. at 23–24.

Both arguments misread *McCoy*. There, we held that the district courts "appropriately considered" the length of the defendants' sentences and their sentence disparities. *McCoy*, 981 F.3d at 285–86 (explaining that "courts legitimately *may* consider . . . that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair" (emphasis added)). But contrary to Burleigh's argument, *McCoy* does not disturb the general rule that district courts have broad and

16

"independent discretion to determine whether there are extraordinary and compelling reasons to reduce a sentence." *Id.* at 279. Nor did *McCoy* increase the burden on district courts to explain their decision. It certainly did not impose any multi-factor framework involving the two issues Burleigh and the dissent advance. Just because district courts "may" consider sentence length and sentencing disparities when evaluating a defendant's pre-First Step Act stacked sentences does not mean they have to accept any particular argument or recite magic words when denying a defendant's motion. The district court's reasoning complies with *McCoy* and our other precedent.[7]

**2.**

Second, Burleigh and the dissent argue that the district court failed to consider his sentence disparity, age and rehabilitation together. Even assuming the district court had to consider these arguments collectively, rather than simply finding each argument separately

---

[7] Burleigh also makes a passing suggestion that the district court "conflated the analysis of whether [] Burleigh had shown an extraordinary and compelling reason for sentence reduction" with its § 3553(a) analysis. Op. Br. at 12. First, this is incorrect. The district court conducted both parts of its analysis separately; it did not indicate that it believed they were one and the same. Second, the district court did not have to address the § 3553(a) factors once it found that there were not extraordinary and compelling reasons. *See High*, 997 F.3d at 187 (affirming a district court's denial of a § 3582(c)(1)(A) motion where the court assumed extraordinary and compelling reasons existed and based its ruling solely on its consideration of the § 3553(a) factors). Third, nothing in the compassionate release statute or in our caselaw prevents district courts from citing facts that are relevant to the § 3553(a) factors analysis in their discussion of whether there are extraordinary and compelling reasons for a sentence reduction. To the contrary, in some cases, like this one, issues and arguments can overlap. For that reason, the district court's discussion of those facts pertinent to both parts of its analysis is not an abuse of discretion. In fact, it is to be expected.

17

insufficient, it did so. At the outset of its extraordinary and compelling reasons analysis, the district court said:

> Defendant argues that "his exemplary and self-motivated rehabilitation," his young age at the time of the offense, and the fact that "stacked" § 924(c) convictions make up a large portion of his sentence constitute extraordinary and compelling reasons *when assessed altogether*. . . . For the foregoing reasons, the Court finds that *these circumstances* do not constitute extraordinary and compelling reasons warranting a sentence reduction.

J.A. 196 (emphasis added). What else could "when assessed altogether" mean other than the court recognized Burleigh was arguing that his rehabilitation, age and sentence disparity should be considered collectively? And after identifying that argument, what else could "these circumstances" mean other than it was rejecting their collective effect? Requiring more than this would turn our review into a game of linguistic "gotcha." Our binding precedent precludes that. *See United States v. Legree*, 205 F.3d 724, 728 (4th Cir. 2000) (explaining that district courts "need not engage in ritualistic incantation in order to establish [] consideration of a legal issue").

### 3.

Third and finally, Burleigh argues that the district court improperly applied the § 3553(a) factors in "one cursory paragraph" that failed to address the disparity between his current sentence and what his sentence would be after the First Step Act as well as his extensive post-sentencing rehabilitation. Op. Br. at 13–14.[8]

---

[8] As an initial matter, the primary case Burleigh cites in making this argument is *United States v. Gutierrez*, which is unpublished and nonbinding. *See* 2023 WL 245001 (4th Cir. Jan. 18, 2023).

18

Like his other challenges, Burleigh's § 3553(a) arguments are inaccurate. The district court wrote not one paragraph but nearly two pages about the § 3553(a) factors. And its discussion was not cursory. To the contrary, the court explained its reasoning and conclusion thoroughly. Specifically, the district court said:

> Defendant's early release also fails to satisfy the relevant § 3553(a) factors—such as the nature and circumstances of the offense, the need to promote respect for the law, deter criminal conduct, and protect the public. The nature and circumstances of Defendant's offense weighs heavily against granting Defendant's Motion. Based on the testimony of the victim, the events of the carjacking and robbery will undoubtedly permanently affect the victim for the rest of his life.

J.A. 200 (citation omitted). The court went on to describe the violent nature of Burleigh's crime in detail. It then observed that he had "only served 27% of his current total sentence" and that "even reducing [his] sentence under the circumstances after only serving about one-fourth of his sentence would not provide deterrence or promote respect for the law." J.A. 200. And as to rehabilitation—which Burleigh claims the court ignored—the court spent a separate paragraph addressing Burleigh's significant rehabilitation and good disciplinary record while in prison, noting that he had a "good reputation with BOP officials, as evidenced by the Letters of Recommendation submitted on his behalf." J.A. 200. Then, the court commended him for his "good behavior and the large strides he has taken for self-improvement," but still concluded that "this conduct does not outweigh the factors discussed above." J.A. 201.

This analysis is more than enough to explain the district court's rationale and to allow for meaningful appellate review of its determination that Burleigh's rehabilitation, although significant, did not outweigh "the nature and circumstances of [Burleigh's]

19

offense, [and] the need to promote respect for the law, deter criminal conduct, and protect the public." J.A. 200. The district court balanced Burleigh's rehabilitation evidence against factors that it felt pointed in a different direction. That is what we expect district courts to do. *See United States v. Malone*, 57 F.4th 167, 176 (4th Cir. 2023). It certainly is not an abuse of discretion.

Likewise, Burleigh's argument that the district court did not properly address his unwarranted sentence disparity in its § 3553(a) analysis similarly fails. Although the district court does not explicitly mention Burleigh's sentence disparity in this portion of its analysis, it discussed it extensively in explaining why the disparity between Burleigh's old and new sentences was not an extraordinary and compelling reason to justify relief. Thus, reading the district court's order as a whole, it is apparent that the court understood Burleigh's sentence disparity argument but did not believe that it weighed in favor of release. While the court could have repeated its discussion of this issue in the § 3553(a) portion of its order, it was not required to repeat the same information twice.

Burleigh and the dissent might prefer for the district court to have said more. But our law on this is clear. We do not flyspeck district court decisions for compliance with our subjective views of the right amount of explanation. The district court complied with our precedent, which requires us to affirm.

### III.

Our standard of review requires Burleigh to show that the district court acted "arbitrarily or irrationally, failed to consider judicially recognized factors constraining its exercise of discretion, relied on erroneous factual or legal premises, or committed an error

20

of law." *Dillard*, 891 F.3d at 158 (cleaned up). He has failed to do so. Accordingly, the district court's judgment is,

*AFFIRMED*.

GREGORY, Circuit Judge, dissenting:

Larry Burleigh has already served fifteen years of his extensive sentence. During his time incarcerated, Burleigh has been an exemplary inmate, engaging in significant rehabilitative programing and earning a near-spotless disciplinary record. Even Burleigh's supervisors at the Bureau of Prisons agree he would be a "functional and respectful member of society" if released. J.A. 153. But, despite this record and the shocking fact that Burleigh's sentence would be fifteen years shorter if he committed the same crimes today, the district court found that his circumstances did not warrant a sentence reduction.

The question before us is whether the district court abused its discretion in denying Burleigh's motion for compassionate release. As explained below, I would find that the district court abused its discretion in at least three ways. Thus, I respectfully dissent.

I.

The district court abused its discretion in not properly applying our precedent, *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), when considering whether extraordinary and compelling reasons warranted reducing Burleigh's sentence.

*McCoy* cannot be understood fully without acknowledging the significant legislative change that precipitated it. Section 924(c) imposes mandatory minimum sentences for using or carrying a firearm in connection with a crime of violence: for a first offense, a 5- to 10-year mandatory minimum, depending on the circumstances; and for a subsequent conviction, a consecutive 25-year mandatory minimum. 18 U.S.C. § 924(c)(1)(A), (c)(1)(C). Under the old statutory framework, which was in effect at the

22

time of Burleigh's sentencing, courts considered a conviction "second or subsequent," and thus triggering the 25-year minimum sentence, even if the defendant obtained their first § 924(c) conviction in the same case. *See McCoy*, 981 F.3d at 275. So, the district court considered Burleigh's § 924(c) charge in Count Six as a second § 924(c) conviction, despite the fact that prior to the carjacking Burleigh had never been convicted of a § 924(c) offense. *See* J.A. 25–26. That 25-year "stacked" charge was the largest component of his over 45-year sentence.

Seven years after Burleigh's sentencing, Congress passed the First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018), which made a "monumental change to sentencing calculations" under § 924(c), *McCoy*, 981 F.3d at 275 (cleaned up). The First Step Act ended this sentence "stacking" by clarifying that the 25-year mandatory minimum only applies when a prior § 924(c) conviction arises from a separate case and "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. As this Court explained, the First Step Act made clear that "the 25-year mandatory minimum is reserved for recidivist offenders, and no longer applies to multiple § 924(c) convictions obtained in a single prosecution." *United States v. Jordan*, 952 F.3d 160, 171 (4th Cir. 2020). However, this change does not apply retroactively to sentences imposed before December 21, 2018, when the First Step Act became law. *See id.* at 174. This includes Burleigh's sentence.

Nevertheless, this Court explained in *McCoy* that stacked § 924(c) sentences can sometimes constitute an extraordinary and compelling reason for reducing a sentencing under 18 U.S.C. § 3582(c). 981 F.3d at 285. District courts consider two "distinct features" when determining whether extraordinary and compelling reasons exist: (1) the severity of

23

the sentence, or in other words, "the sheer and unusual length" of the defendant's sentence; and (2) "the gross disparity between [that] sentence[] and the sentence[] Congress now believes to be an appropriate penalty for the defendant['s] conduct" after passage of the First Step Act. *Id.*

The majority says "the district court addressed th[e]se issues head on." Maj. at 13. I disagree.

To begin, the district court failed to address the first of these features: the severity or "sheer and unusual length" of Burleigh's sentence. This feature involves comparing a defendant's lengthy sentence—driven by mandatory minimums under § 924(c)—to shorter sentences imposed for other, more egregious crimes like murder or kidnapping. *See McCoy*, 981 F.3d at 285; *United States v. Brown*, 78 F.4th 122, 131 (4th Cir. 2023). As Burleigh explains, his "35-year stacked sentence alone is 'decades longer' than the national sentencing average for manslaughter (over 5 years) and robbery (roughly 9 years), and it exceeds the national sentencing average for murder (just over 24 years) and kidnapping (roughly 15 years)." Opening Br. at 10 (citing *United States v. Redd*, 444 F. Supp. 3d 717, 723, 728 n.20 (E.D. Va. 2020)). But the district court did not engage in any such comparison at all. Additionally, *McCoy* shows us that another component of this feature is the extent to which the "stacked" sentence was the primary driver of a defendant's lengthy sentence. 981 F.3d at 278 (noting that the § 924(c) "mandatory minimums were the lion's share of the defendants' sentences"), *see also id.* at 285 (endorsing one district court's "concern about the length of the mandatory 35-year sentence it was required to impose, driven almost entirely by a 32-year minimum sentence under § 924(c)"). Although

24

this was true for Burleigh, the district court did not reference this either. As the majority points out, the court did note that Burleigh was sentenced to 420 months for Counts Four and Six, *see* Maj. at 13 (citing J.A. 199–200); however, mere reference to the length of his stacked sentence is inadequate.

Next, the district court also did not properly engage with the second feature outlined in *McCoy*: the gross disparity. *See* Opening Br. at 9 (stating that district court's analysis was in "complete disregard" of the disparity). This feature concerns the difference between a sentence imposed before the First Step Act and that which would have been imposed after the Act. In Burleigh's case, this was a disparity of fifteen years. We explained in *McCoy* that any such "disparity is primarily the result of Congress' conclusion that sentences like [defendant's] are unfair and unnecessary [and the First Step Act is], in effect, a legislative rejection of the need to impose sentences under § 924(c), as originally enacted, as well as a legislative declaration of what level of punishment is adequate." *McCoy*, 981 F.3d at 285 (quoting *Redd*, 444 F. Supp. 3d at 723); *see also Brown*, 78 F.4th at 132 ("[t]he First Step Act's amendment to § 924(c) reflects Congress's judgment that sentences like Brown's are dramatically longer than necessary or fair and, in turn are not necessary to serve the ends of § 3553(a)(2).") (cleaned up).

Here, all the district court said was that Burleigh's "sentence under the First Step Act may carry a different mandatory minimum today." J.A. 199. It did not say how long that difference was—that of fifteen years, an undoubtably significant length of time. It simply concluded that "Defendant's sentence does not justify a reduction," J.A. 199, without stating what the disparity was nor how such a disparity impacted its analysis. This

25

is in stark contrast to other courts that expressly consider the disparity. *See, e.g.*, *McCoy*, 981 F.3d at 278, 285 (endorsing one district court's discussion of a 200-month disparity, as well as that of another district court that addressed a 30-year disparity); *Brown*, 78 F.4th at 131 (discussing a 20-year disparity, which, in addition to the "sheer length" of his sentence—the first feature—"ma[d]e clear that this is such a case" where a sentencing reduction was warranted).

While I agree with the majority that district courts have broad discretion in making their determination as to extraordinary and compelling reasons, *see* Maj. at 16–17, I would find the district court's failure to properly engage with the features explicated in *McCoy* was so grave that its opinion constitutes abuse of discretion.

## II.

I also believe the district court abused its discretion by not considering Burleigh's three arguments—sentence disparity, age, and rehabilitation—in combination when considering extraordinary and compelling reasons for a sentence reduction.

The majority first questions whether a court must consider the arguments collectively. Maj. at 17–18 ("Even assuming the district court had to consider these arguments collectively, rather than simply finding each argument separately insufficient . . ."). I believe our caselaw makes that clear.

When affirming the district courts' rulings in *McCoy*, we explained that "in granting compassionate release, the district courts relied *not only* on the defendants' § 924(c) sentences but on *full consideration* of the defendants' individual circumstances. . . . [T]he

26

courts focused on the defendants' relative youth . . . *[c]ombined* with the substantial sentences the defendants had already served . . . *[a]nd* during that time, . . . each defendant had . . . taken substantial steps toward rehabilitation." *McCoy*, 981 F.3d at 286 (emphases added). And in a later case, we held that the district court erred where it "did not consider the actual details of [the defendant's] rehabilitation *in combination with* the other circumstances but rather simply determined that rehabilitation could not establish an extraordinary and compelling reason for release." *United States v. Davis*, No. 21-6960, 2022 WL 127900, at *1 (4th Cir. Jan. 13, 2022) (unpublished) (per curiam) (emphasis added). In my view, the district court was obligated to consider Burleigh's arguments in concert.

The majority next contends that the district court *did* consider Burleigh's arguments together. Maj. at 18. In support of this, the majority quotes part of the district court opinion where it cites to Burleigh's motion. Maj. at 18 (citing J.A. 196). There, the district court had summarized Burleigh's argument that his three factors "constitute extraordinary and compelling circumstances *when assessed altogether*." J.A. 196. But the court's acknowledgment of what Burleigh had argued—and argued correctly as a matter of law— is not the same as the court correctly conducting that assessment itself. There must instead be an "indication that the district court considered [the defendant's] circumstances, as a whole." *Davis*, 2022 WL 127900, at *2.

Nowhere in the opinion does the district court indicate that it did in fact consider these three reasons together. Rather, its analysis shows that it considered each of the three reasons in isolation. *See* J.A. 197 ("the Court does not find that Defendant's rehabilitation

27

constitutes extraordinary and compelling circumstances warranting a sentencing reduction"); J.A. 198 ("the Court does not find that Defendant's age at the time of the offense constitutes extraordinary and compelling circumstances"); J.A. 199 ("The Court finds that Defendant's sentence does not justify a reduction."). Accordingly, I believe this to be a clear legal error. While each of these factors may not be sufficient on their own, taken together, it is possible that they may rise to the level of an extraordinary and compelling reason. This is why our Court requires district courts to assess them collectively. *Davis*, 2022 WL 127900, at *1–*2. The district court abused its discretion in failing to do so.

### III.

Finally, in my view, the district court abused its discretion when considering the § 3553(a) factors by failing to provide an individualized explanation of why it believed compassionate release was inappropriate and failing to address Burleigh's argument regarding the sentencing disparity.

I agree with the majority that a district court need not "provide an exhaustive explanation analyzing every § 3553(a) factor," nor is there a "categorical requirement" that it acknowledge and address each argument a defendant raises. *United States v. Jenkins*, 22 F.4th 162, 170–71 (4th Cir. 2021) (cleaned up). However, a district court's "discretion is not boundless," and "[u]nder certain circumstances, a district court may abuse its discretion by failing to adequately explain how it weighed the § 3553(a) factors, or by failing to recognize that the relevant § 3553(a) factors clearly favor release." *United States v. Smith*,

28

No. 24-6726, 2025 WL 1864767, at *3 (4th Cir. July 7, 2025) (cleaned up) (citing *United States v. Malone*, 57 F.4th 167, 177 (4th Cir. 2023)).  The touchstone is whether the court has "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *Chavez-Meza v. United States*, 585 U.S. 109, 113 (2018) (cleaned up); *see also Concepcion v. United States*, 597 U.S. 481, 501 (2022) (holding that in considering a First Step Act motion, a court must "make clear that it reasoned through the parties' arguments") (quotation and citation omitted)).  "[J]ust how much of an explanation is required" will depend on the complexity of a given case, *Jenkins*, 22 F.4th at 170; in more complex cases, "more explanation may be necessary," *Chavez-Meza*, 585 U.S. at 116.

## A.

When assessing the § 3553(a) factors, a district court "must account not only for the circumstances at the time of the original offense but also for significant post-sentencing developments." *United States v. Mangarella*, 57 F.4th 197, 203 (4th Cir. 2023).  "[W]here a movant presents substantial evidence of post-sentencing rehabilitative efforts, a district court must provide 'a more robust and detailed' explanation in ruling on a motion for compassionate release." *United States v. Centeno-Morales*, 90 F.4th 274, 281 (4th Cir. 2024) (quoting *United States v. High*, 997 F.3d 181, 190 (4th Cir. 2021)).  In other words, if a defendant has provided "significant and extensive evidence of post-sentencing rehabilitation," the district court must offer an "individualized" explanation. *United States v. Gutierrez*, No. 21-7092, 2023 WL 245001, at *3 (4th Cir. Jan. 18, 2023) (unpublished) (citing *United States v. Martin*, 916 F.3d 389, 396 (4th Cir. 2019); *United States v.*

29

*McDonald*, 986 F.3d 402 (4th Cir. 2021)).  We consider de novo whether a court must provide an individualized explanation when ruling on a motion for sentence reduction. *United States v. Davis*, 99 F.4th 647, 653(4th Cir. 2024).

Burleigh argues that because he offered extensive evidence of his rehabilitation, the district court was required to provide a detailed explanation.  *See* Opening Br. at 14–15.  I agree, based on three key pieces of his extensive rehabilitative record.

First is the lengthy duration of Burleigh's near-spotless disciplinary record.  From 2014 to 2022, he maintained a streak of zero disciplinary infractions, his record later blemished only by a minor infraction for refusing to obey an order.  *See* J.A. 180.  He has never received an infraction for substantive abuse or violence.  *Id.*  This outstanding record demonstrates a respect for the law and diligent work to rehabilitate himself over the fifteen years he has served.  And, in my view, this fifteen-year time period resembles that in *Martin* and *McDonald*, where the defendants had spent "nearly two decades in prison," and where this Court deemed a more robust explanation was necessary as to why these achievements do not justify a reduced sentence.  *McDonald*, 968 F.3d at 412 (discussing *Martin*, 916 F.3d).

Second is Burleigh's extensive list of accomplishments and rehabilitative programs in which he engaged while incarcerated.  As he argued to the district court, "he has availed himself of programs in the BOP, not only designed to help him better himself, but to better the lives of other inmates."  J.A. 190.  Burleigh, who already had his GED, took numerous courses, including classes on drug abuse, behavior therapy, Spanish, and public speaking.  J.A. 129–152.  He serves as a suicide watch companion, a position for which prison staff

30

"highly recommended" him. J.A. 150, 153. He was baptized, has taken numerous religious courses, and has worked for the prison chapel. J.A. 145–49, 156. He also worked in the commissary. J.A. 153. Supervisors in the BOP wrote letters praising Burleigh's work and attesting that he would be a "functional and respectful member of society" who "will be a success story if he is given an opportunity." J.A. 153; *see also* J.A. 154–57. Finally, Burleigh was stepped down from a high-security facility to a medium security-facility. J.A. 124.

The above actions are in line with those of defendants for whom this Court has determined a more robust and detailed explanation is required. *See*, *e.g.*, *Davis*, 99 F.4th at 660–61 (explaining that the defendant "'submitted documentary evidence that corroborat[ed] [his] coursework and good behavior,' including a glowing letter from his employer that spoke to his character and desire for self-improvement") (quoting *Martin*, 916 F.3d at 396); *Gutierrez*, 2023 WL 245001 at *4 (explaining that the defendant earned a GED, took college courses, received vocational training certificates, mentored other inmates and served as a recreation aide, and had a BOP assessment that he was a low risk for recidivism); *McDonald*, 986 F.3d at 411 (explaining that defendants "obtained their GEDs, undertook significant coursework, engaged in prison programming, including drug treatment programs, parenting courses, and health and wellness initiatives, earned good time credit for their good behavior, and earned low levels of security clearance"); *Martin*, 916 F.3d at 396 (describing defendant's successful completion of GED and tutoring of other inmates); *compare with Centeno-Morales*, 90 F.4th at 281 (defendant had completed "just a few vocational courses," "received two disciplinary infractions while incarcerated," and "remain[ed] classified as a 'medium' security inmate," which we held was "not the

31

kind of exceptional post-sentencing evidence . . . [that] would require a robust and detailed explanation.") (cleaned up).

Third is the fact that Burleigh engaged in these rehabilitative efforts without any incentive. As he explained in his motion for sentence reduction, "[t]he context for [his] rehabilitation adds to its weight," as he "began improving himself long before the First Step Act was passed, or COVID-19 triggered compassionate release motions across the country." J.A. 117. This argument is like that recognized in *Martin*, where we explained that the defendant's "rehabilitation is especially noteworthy" because she "strove to better herself and those around her without the prospect of any incentive or reward," as she could not have foreseen that a change to the law would eventually be enacted. 916 F.3d at 397. There, we held that "[t]he district court must provide an individualized explanation for why Martin's steps toward rehabilitation are meaningless." *Id.*

For these three reasons, both individually and taken together, I would hold that the district court was required to provide a robust and detailed explanation when it denied Burleigh's motion. *See Gutierrez*, 2023 WL 245001, at *4 (finding the defendant entitled to "an individualized explanation for why the multitude of redemptive measures he has taken do not weigh in favor of relief under the § 3553(a) factors.") (cleaned up).

B.

Having found an explanation required, I now turn to whether the district court did offer a sufficiently robust and individualized explanation. I find that it did not.

The court's § 3553(a) analysis spans approximately one page of its ten-page opinion. *See* J.A. 200–01. The majority claims this was nearly two pages, Maj. at 19, but

32

I fail to see an analysis of that length. Of that one page, nearly all of the court's analysis recounted "[t]he nature and circumstances of Defendant's offense," restating Burleigh's actions during the carjacking and indicating that he has only served twenty-seven percent of his current total sentence. J.A. 200. The district court dedicated just three sentences to Burleigh's rehabilitative efforts, stating only:

> To his credit, Defendant has received relatively few disciplinary infractions during his incarceration. The Court also acknowledges that Defendant is building a good reputation with BOP officials, as evidenced by the Letters of Recommendation submitted on his behalf. Nevertheless, while the Court commends Defendant for his good behavior and the large strides he has taken for self-improvement, this conduct does not outweigh the factors discussed above.

J.A. 200–01 (citation to the record omitted).

I believe that this analysis falls short of the required standard. It bears resemblance to *Brown*, where the district court "did briefly consider [the defendant's] rehabilitative efforts while incarcerated" but "failed to weigh how those efforts ameliorate any risk posed to [the defendant's] community upon his release," and whose analysis we therefore deemed insufficient. 78 F.4th at 133. Similarly, in *Gutierrez*, the district court referenced the defendant's transgressions as a large-scale narcotics trafficker before noting that "[w]hile the Court applauds the rehabilitative efforts, . . . [h]e simply has not demonstrated he is entitled to the relief he requests." 2023 WL 245001, at *2. We faulted the district court's reference to rehabilitation as merely "one passing comment in an explanation otherwise devoted—like the explanation we deemed inadequate in *Martin*—to [the defendant's]

33

original criminal behavior." *Id.* at *4.[1] We continued that "nothing about that comment acknowledges or reflects consideration of the exceptional breadth of [the defendant's] rehabilitative efforts" and therefore it "does not satisfy the requirement of a 'robust' and 'individualized' explanation." *Id.*

This case presents the same infirmities. The district court only cursorily mentions Burleigh's rehabilitation in a section otherwise dedicated to describing Burleigh's offense. J.A. 200–01. I acknowledge that it does include a bit more information than the court in *Gutierrez*: it does not fail entirely to note Burleigh's few disciplinary infractions and good reputation with BOP officials, whereas the *Gutierrez* district court even more cursorily referenced the defendant's "rehabilitative efforts." But I still think the court's analysis here is insufficient, as it neglects to consider other pertinent information: Burleigh's extensive continuing education, religious studies, mentorship and support of other inmates, and exemplary work as an employee. And despite acknowledging the existence of some rehabilitation, the district court never explains why such evidence has no bearing on whether Burleigh's sentence continues to serve the purposes of sentencing.

Here, without giving proper consideration and weight to Burleigh's rehabilitation, which has occurred over approximately fifteen years, and instead focusing primarily on the facts of the carjacking itself, we are not left with certainty that the district court considered

---

[1] In *Martin*, we held that the district court abused its discretion because "[t]he explanation the district court provided . . . was merely a recitation of [defendant's] original criminal behavior." 916 F.3d at 397. We explained that the district court "was content to memorialize [the defendant's] past transgressions without giving any weight to the multitude of redemptive measures that [she] has taken since she was initially sentenced." *Id.*

Burleigh's arguments nor that it "has a reasoned basis" for its decision. *See Chavez-Meza*, 585 U.S. at 113 (cleaned up). I believe that the district court's failure to provide a sufficiently detailed explanation is an abuse of discretion.

C.

The district court committed a final, compounding error when it failed altogether to acknowledge the sentencing disparity in the 18 U.S.C. § 3553(a) analysis.[2] The majority admits this, explaining that "the district court does not explicitly mention Burleigh's sentence disparity in th[e] [§ 3553(a)] portion of its analysis." Maj. at 20. Nevertheless, my colleagues hold that because the court had discussed that disparity "extensively" when considering the extraordinary and compelling reason portion of its discussion, it need not have provided any discussion in the § 3553(a) context. I find this to be gravely incorrect.

To begin, as explained above, I already find the district court's limited consideration of the significant sentencing disparity when conducting its extraordinary and compelling reasons analysis to be inadequate. Even if that explanation were to be repeated in the § 3553(a) section of the opinion, I would continue to believe that a more robust explanation is required.

This is because the district court neglected to discuss the disparity in any manner with respect to two highly relevant § 3553(a) factors: § 3553(a)(2) and § 3553(a)(6). *See*

---

[2] Burleigh also argued that his § 924(c) convictions involve the same gun and that other circuits have prohibited multiple § 924(c) sentences arising from the single use of a firearm. J.A. 126. He next discussed "a release plan that will protect the public and ensures his successful transition into the community." J.A. 127. While these arguments may not require significant acknowledgment, the district court's failure to acknowledge them at all exacerbates its other failures.

*Smith*, 2025 WL 1864767, at *4 ("several of the § 3553(a) factors contemplate the consideration of sentencing disparities").

Section 3553(a)(2) concerns "the need for the sentence imposed" to "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant." In *Brown*, we explained that "[t]he First Step Act's amendment to § 924(c) reflects Congress's judgment that [at least pre-First Step Act] sentences . . . are 'dramatically longer than necessary or fair' and, in turn are not necessary to serve the ends of § 3553(a)(2)." 78 F.4th at 132 (quoting *McCoy*, 981 F.3d at 286). Next, § 3553(a)(6) concerns "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In *Brown*, we held that this factor "clearly favor[ed]" the defendant because of the significantly shorter sentence he would have received after the First Step Act. 78 F.4th at 132. Furthermore, our decision in *Davis* shows that non-retroactive changes may give rise to an unwarranted sentencing disparity for the purpose of § 3553(a)(6). *See Davis*, 99 F.4th at 661; *see also Smith*, 2025 WL 1864767, at *4 (when discussing § 3553(a)(6), stating that "[t]here is no question that [the defendant's] sentence is an outlier in light of the repeal of § 924(c)'s stacking provision—he faced a mandatory minimum sentence 18 years longer than it would be for a defendant in similar circumstances sentenced today.").

The district court here did not consider the extraordinary sentencing disparity at all in reference to § 3553(a)(2) and § 3553(a)(6) *nor any other factors*. *See* J.A. 200–01. In *Brown*, we explained that "[i]f the district court had considered the[] facts [related to

36

§ 3553(a)(2) and § 3553(a)(6)], it might have realized that they contradict the very limited reasoning it *did* provide." 78 F.4th at 132. The same is likely true here.

I believe that the district court's failure to adequately grapple with these two factors, overlapping with its complete failure to consider Burleigh's argument regarding his sentencing disparity, constitutes an abuse of discretion.

IV.

For the reasons stated above, I would vacate and remand to the district court to conduct the proper consideration and analysis. Therefore, I must dissent.